UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 22-cv-81037-CANNON/REINHART

MARK KRIEGER,

    Plaintiff,

v.

TD BANK. N.A., a National Bank
Association, and EQUIFAX INFORMATION
SERVICES, LLC, a Georgia Limited Liability
Company,

    Defendants.
_____/

**DEFENDANTS' COMBINED RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO EXTEND EXPERT WITNESS DISCLOSURE DEADLINE
AND MODIFY FIRST AMENDED SCHEDULING ORDER**

Defendants, TD Bank, N.A. ("***TD Bank***") and Equifax Information Services, LLC ("***Equifax***") (collectively, "***Defendants***"), pursuant to S.D. Fla. L.R. 7.1, submit their Combined Response in Opposition to Plaintiff's Motion to Extend Expert Witness Disclosure Deadline and Modify First Amended Scheduling Order [D.E. 115] ("***Motion to Extend***"). In support thereof, Defendants state as follows:

**PRELIMINARY STATEMENT**

When stripped of its rhetoric, Krieger's Motion to Extend is nothing more than a blatant attempt to exploit his own dilatory behavior and discovery failures to bolster his baseless claim for damages, prejudice Defendants, and delay the trial in this case. The Court should not permit such actions.

In his Motion to Extend, Krieger feigns that "newly discovered information" necessitates the drastic step of reopening discovery, *which has been closed for over ten (10) weeks*, and further amending the scheduling order. However, Krieger's "newly discovered information" is not new at all; but rather, consists of Krieger's *own* bank statements that he has ostensibly been in possession, custody, and control of since the outset of this litigation. [D.E. 115, ¶10]. Indeed, Krieger offers no explanation whatsoever as to why he did not or could not compile his bank statements and produce them during discovery—despite TD Bank's timely and repeated requests for him to provide all documentation to support his allegations and claim for damages. *See* **Exhibit A**, Krieger's Objections and Responses to TD Bank's First Request for Production of Documents, Nos. 15 and 20; **Exhibit B**, TD Bank's Discovery Deficiency Notice to Krieger dated April 6, 2023. More significantly, Krieger offers no excuse or justification as to why he could not have retained and disclosed a damages expert before the close of discovery—particularly in light of Krieger's representation that his expert's intended testimony is "consistent with [Krieger's] position since the commencement of this action." [D.E. 115, pg. 9].[1]

Moreover, Krieger's Motion to Extend contains several factual misrepresentations. Chief among them, Krieger's newly compiled bank statements do not show that "various payments actually made by [Krieger]" were missing from TD Bank's records, differed in amount, or were improperly or untimely applied to Krieger's loan account. [D.E. 115, pg. 4]. On the contrary, a simple comparison of Krieger's bank statements and the records produced by TD Bank in discovery reveal that TD Bank's records are, in fact, accurate.

---

[1] Defendants maintain that this Honorable Court can readily comprehend the issues in this case without the aid of an expert—particularly as to the application of payments to Krieger's loan account with TD Bank and the reporting of his delinquencies by Equifax. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Khumo Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Likewise, Krieger did not first learn of the "suspense account" during the deposition of TD Bank's corporate representative. Krieger was aware of and even alleged its existence in his initial and first amended Complaints. [D.E. 1, ¶19 ("Defendant TD . . . began designating and applying Plaintiff's monthly payments as 'unapplied funds' under the Note and Mortgage . . . and . . . holding said payments for weeks (or months) at a time following receipt before subsequently applying such amounts to Plaintiff's account[.]"); D.E. 11, ¶26 (same)]. Krieger even attached as exhibits to both his initial and first amended complaints a Qualified Written Request ("*QWR*")[2] and TD Bank's response,[3] both of which specifically discussed the "suspense account."

Further, at no time did TD Bank's corporate representative "testify[] repeatedly as to a lack of knowledge with respect to several of the designated areas of inquiry." [D.E. 115, pg. 3]. Notably, Krieger fails to cite to any portion of the deposition transcript to support his unfounded assertions.

Perhaps even more glaring is Krieger's failure to demonstrate how his dilatory behavior justifies the reopening of discovery as to Equifax. In fact, Krieger's Motion to Extend bears no mention of Equifax as a party-defendant in this case. Equifax, like TD Bank, is equally prejudiced by Krieger's attempt to reopen discovery and delay the trial in this case. This is especially so given

---

[2] [D.E. 1, Ex. N; D.E. 11, Ex. N]. The QWR dated March 1, 2022 from Krieger's counsel David Haft attached as Exhibit N to both Krieger's initial and first amended Complaints is further attached as **Exhibit C**. The QWR specifically requested a payment breakdown "indicating the portion, if any, applied or credited to principal, interest, deferred interest, escrow, *suspense* or other treatment . . . ."). *Id.* (emphasis added).

[3] [D.E. 1, Ex. O; D.E. 11, Ex. O]. TD Bank's QWR Response attached as Exhibit O to both Krieger's initial and first amended Complaints is attached as **Exhibit D**. TD Bank's QWR Response notes the existence of the suspense account, stating that "[t]here were no funds in the separate suspense account (referred to as "Unapplied Funds") as of February 28th, 2022." TD Bank's QWR Response also attaches a fee breakdown report that included an "Unapplied Funds" column. *Id*.

that Krieger's current claim against Equifax arises out of the same nucleus of operative fact for the claims upon which this Court rendered final judgment on June 26, 2023. [D.E. 79].

Accordingly, for the reasons stated herein, Defendants respectfully request that the Court deny Krieger's Motion to Extend in its entirety.

## ARGUMENT AND CITATION TO AUTHORITIES

**A.    Krieger's Lack of Diligence Fails to Demonstrate "Good Cause" to Modify the Amended Scheduling Order and Reopen Discovery**

The significance of observing deadlines contained in a scheduling order is recognized in Rule 16(b), where it provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge. . . ." Fed. R. Civ. P. 16(b). The Advisory Committee notes to Rule 16 also point out that "[t]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* Furthermore, the Eleventh Circuit has found that "[t]his good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *White v. Volvo Trucks of N. Am., Inc.*, 211 F.R.D. 668, 670 (M.D. Ala. 2002) (quoting *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1418 (11th Cir. 1998)). "A lack of diligence in pursuing a claim is sufficient to show a lack of good cause," *Quinn v. Deutsche Bank Nat. Trust Co.*, 625 F. App'x 937, 940 (11th Cir. 2015) (citation omitted), as "[d]iligence, not lack of prejudice, is the touchstone of the Rule 16(b)(4) inquiry." *Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 4870839, at *2 (S.D. Ala. Sept. 12, 2013) (alteration added; citations omitted). Moreover, where a party fails to abide by the deadlines for disclosure in a scheduling order, merely demonstrating a lack of prejudice to the opposing party is insufficient to justify late disclosures. *White*, 211 F.R.D. at 670.

Here, nothing in Krieger's Motion to Extend establishes "good cause" for his failure to comply with the expert disclosure deadline set forth in the Court's Amended Scheduling Order. Krieger has not and cannot demonstrate how he exercised any semblance of due diligence in compiling his bank statements and disclosing his expert witness when the time for discovery has now passed. Beginning to inquire into issues relevant to his damages *after* the discovery deadline is in fact indicative of a *lack* of diligence on Krieger's part. To extend the deadline for Krieger to disclose an expert witness at this stage would render the Court's Amended Scheduling Order obsolete and would prejudice the Defendants. *See Rogers v. Hartford Life and Acc. Ins. Co.*, No. 12-0019, 2012 WL 2395194, at *1 n.3 (S.D. Ala. June 22, 2012) ("[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril . . . Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.") (alterations in original; internal quotation marks and citation omitted); *see also Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 684 (M.D. Fla. 2010) ("Plaintiffs' delay in designating Mr. Thompson as their expert leaves Liberty Mutual without the chance to depose this expert witness.") (citing *Smith v. Jacobs Eng'g Group, Inc.*, 2008 WL 5351047, at *3 (N.D. Fla. Mar. 20, 2008) (prejudice found when required disclosures were made after the discovery period had lapsed); *Hubbard v. Edwards*, 2006 WL 2557904 (M.D. Ga. Sept. 1, 2006) (same)); *Ballard v. Krystal Restaurant*, 2005 WL 2653972 (M.D. Ala. Oct. 17, 2005) (granting defendant's motion to strike because plaintiff waited two and a half months to disclose its expert); *White*, 211 F.R.D. at 670 (granting defendants' motion to strike because plaintiff disclosed an expert witness seven weeks late).

**B.     Krieger's Untimely Disclosure of His Expert Witness is Neither Substantially Justified nor Harmless**

Federal Rule of Civil Procedure 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witnesses it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). This disclosure must include "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The report must also contain the following information: a complete statement of all the opinions the expert plans to express and the basis for them, the data considered by the expert in forming the opinions, any exhibits intended to be used in summarizing or supporting the opinions, the experts' qualifications including a list of all authored publications in the previous ten years, a list of all the other cases in which the witness testified as an expert during the previous four years, and a statement of the compensation the expert is to receive for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). These disclosures must be made "***at the times and in the sequence that the court orders***." Fed. R. Civ. P. 26(a)(2)(C) (emphasis added).

"Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise . . . compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (internal citation omitted), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006). To this end, Rule 37(c)(1) provides a self-executing sanction for untimely expert reports. In pertinent part, Rule 37(c)(1) states that if a party fails to provide the information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a

6

motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Siplin v. Carnival Corp.*, 2018 WL 2688932, at *1 (S.D. Fla. June 5, 2018).

The Court has broad discretion in deciding whether a failure to disclose evidence is substantially justified or harmless under Rule 37(c)(1). *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, 2009 WL 92826, at *3 (M.D. Fla. Jan. 14, 2009). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) (internal quotations omitted). In determining whether a failure to disclose evidence is substantially justified or harmless, courts are guided by the following four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *TOA Trading LLC v. Mullen Automotive, Inc.*, 2023 WL 8476462, at *4 (S.D. Fla. Nov. 27, 2023) (quoting *Chappell v. Carnival Corp.*, 2023 WL 3003806 (S.D. Fla. Apr. 18, 2023)).

1. <u>The Proposed Expert Testimony Is Unnecessary and Unavailing.</u>

The first factor—*i.e.*, the importance of the excluded discovery—weighs against reopening discovery to permit testimony from Krieger's proposed expert. Reopening discovery will not impact Krieger's chances of success on a motion for summary judgment or at trial because the two justifications Krieger offers as to the import of this testimony are demonstrably false.

The first justification that Krieger proffers as to why expert testimony is now necessary is that the "new" information uncovered in the deposition of TD Bank's corporate representative, Caleb McVey, has led him to conclude that the "scope and extent of the damages" resulting from "[TD Bank]'s conduct in connection with the servicing of the subject loan documents" was "far greater and more expansive and complicated than ever previously understood[.]" [D.E. 115, pg.

7

4]. The purported "new" information is (1) the extent of the inaccuracies and inconsistencies in TD Bank's records that McVey could not explain, and (2) TD Bank's use of a suspense account in applying payments on the mortgage loan. *Id.* at 3-4.

Krieger's argument that information gleaned from the deposition revealed the necessity of the expert fails for several reasons. First, the McVey deposition did not reveal inaccuracies and inconsistencies in TD Bank records. The opposite occurred. Krieger's counsel repeatedly questioned McVey about purported inaccuracies and inconsistencies, and McVey repeatedly testified that the records were, in fact, accurate and explained why the records read the way they do. *See, e.g.,* **Exhibit E**, Deposition of Caleb McVey, pgs. 52:3-15; 72:1-76:19; 102:8–105:24; and 158:1-4. Second, Krieger was aware of the "suspense account" and alleged its existence in his initial and first amended Complaints. [D.E. 1, ¶31; D.E. 1-16] and [D.E. 11, ¶38; D.E. 11-14]. This account is also expressly permitted by the Mortgage. *See* **Exhibit F**, Mortgage, § 1. Third, documents produced by TD Bank during discovery—and even attached to the complaint—showed the use of the "suspense account." *See* **Exhibits C** and **D**. In sum, the deposition provided Krieger with no new information that necessitates a damages expert after the close of discovery.

The second justification Krieger proffers as to why expert testimony is necessary is that the other "new" evidence (*i.e.*, bank account statements that were ostensibly in Krieger's possession since the outset of the litigation) reveals inaccuracies in the records that TD Bank timely produced during discovery. This contention is demonstrably false. A simple comparison of Krieger's bank statements and the records produced by TD Bank in discovery reveal that TD Bank's records are, in fact, accurate. *See* **Exhibit G**, Analysis of Krieger's Later-Produced

Account Statements (KRIEGER 000849–985) and TD Bank's Transaction Report.[4] Krieger's failure to identify specific inaccuracies revealed by the bank account statements that Krieger produced for the first time after the second mediation and after the close of discovery is therefore unsurprising; he did not identify any inaccuracies because they do not exist. Moreover, the work of an expert is not required to determine if the numbers reconcile. Reconciling the numbers requires merely adding numbers together and comparing the figures in the bank account statements to the figures in TD Bank's transaction report.

        2.        <u>The Only Explanations Krieger Offers as to Why He Failed to Timely Disclose the Proposed Expert Testimony Are Belied by the Facts</u>.

The only explanation that Krieger offers as to why he failed to timely disclose the proposed expert testimony is the same inaccurate contention that "new" information is now available that requires the use of a forensic expert. As established, *supra*, there is no "new" information that will have any bearing on Krieger's chances of success on a motion for summary judgment or at trial: (1) the bank account statements produced after the second mediation were presumably in Krieger's possession, custody, and control since the outset of the litigation, and Krieger provides no explanation to the contrary; (2) Krieger was aware of the existence of the "suspense" account when he filed his initial and first amended Complaints and alleged its existence therein; and (3) the McVey deposition did not reveal inexplicable inaccuracies and/or inconsistencies in TD Bank records.

The second factor—*i.e.*, Krieger's failure to timely disclose the expert testimony—thus also weighs against reopening discovery to permit testimony from Krieger's proposed expert. The analysis of this factor makes it difficult to view Krieger's motion to reopen expert discovery as

---

[4] The analysis also shows that the Complaint's specific allegations regarding the amount of payments made per month are false.

anything another than a new iteration of the same strategy that he has been employing since the beginning of this litigation—specifically, increasing the Defendants' litigation costs by delaying resolution. Indeed, Krieger's allegation that he had no knowledge of the "suspense" account prior to the McVey deposition despite pleading its existence in his initial and first amended Complaints is plainly false.

> 3. **TD Bank Will Suffer Prejudice If Discovery Is Reopened and the Expert Testimony Is Allowed.**

Likewise, the third factor—*i.e.*, the potential prejudice that would arise—weighs against reopening discovery to permit testimony from Krieger's proposed expert. Reopening discovery would prejudice TD Bank's ability to prepare its anticipated motion for summary judgment. *Collado v. Carnival Corp.*, 2011 WL 3268042, at *2 (S.D. Fla. July 29, 2011) (declining to reopen discovery following plaintiffs' failure to timely disclose an expert report because "extending discovery at this late state in litigation" would therefore be "inappropriate"). Were Krieger's motion to reopen expert discovery granted, within an approximately two-month span, TD Bank would need to (1) propound written expert discovery requests; (2) resolve any objections through the conferral and hearing process; (3) depose the expert; (4) prepare any necessary *Daubert* motion; and (5) file its motion for summary judgment.

Reopening discovery at this late stage of this litigation would also prejudice TD Bank because it would permit Krieger to resort, yet again, to the only strategy that is saving his claims from dismissal—that is, delaying the resolution of this action and, in the process, attempted to gain leverage by increasing TD Bank's litigation costs. The second mediation provides but one example of how these delay tactics prejudice TD Bank. TD Bank arrived at the second mediation—which was intended to allow the parties to revisit resolution after the close of discovery—committed to spending the time finding a resolution acceptable to both parties. Krieger arrived with bank

statements[5] that have been in his possession, custody, and control since the outset of the litigation and, by Krieger's own admission, immediately claimed that the statements would bar any efforts at resolution. [D.E. 115, pg. 4]. Shortly thereafter, Krieger filed the instant motion to reopen expert discovery, misrepresenting the facts to claim that the account statements and other "new" evidence necessitate the use of a forensic accountant. If Krieger's motion to reopen expert discovery is granted, TD Bank will add the costs of this Opposition, written expert discovery, the deposition of the expert, and a potential *Daubert* motion **on top of** the costs TD Bank incurred participating in the second mediation that was thwarted before it even began.[6] Had Krieger timely disclosed the proposed expert and the evidence upon which he would rely, the second mediation may have been able move the parties towards resolution, and TD Bank may not have been forced to incur the costs of an entirely futile exercise.

4. <u>A Continuance Cannot Cure the Prejudice that TD Bank Would Suffer.</u>

The final factor—*i.e.*, the availability of a continuance to cure prejudice—also weighs against reopening discovery to permit testimony from Krieger's proposed expert because the prejudice that TD Bank would suffer is not limited to its inability to timely move for summary judgment. A continuance will not prevent Krieger from benefitting from the same dilatory tactics to which he has been resorting throughout this litigation. Instead, it invites more of these tactics, which the Court should not tolerate.

---

[5] Even though Krieger arrived with his statements, Krieger would not share them with TD Bank until redactions were applied. Thus, the error in Krieger's comparison of his own bank statements to TD Bank's records could not even be addressed at the second mediation.

[6] The late-production of these materials also meant that TD Bank incurred the costs of deposing Krieger without having the opportunity to question him about the account statements.

## **CONCLUSION**

For the foregoing reasons, Defendants TD Bank, N.A. and Equifax Information Services, LLC respectfully request that the Court deny Krieger's motion to reopen expert discovery.

Date:  January 29, 2024

Respectfully Submitted,

*/s/ Jason Daniel Joffe*
Jason Daniel Joffe, Esq.
Florida Bar No. 0013564
SQUIRE PATTON BOGGS (US) LLP
200 S. Biscayne Blvd., Suite 3400
Miami, FL 33131
Telephone: (305) 577-7000
Facsimile: (305) 577-7001
jason.joffe@squirepb.com

*Counsel for Defendant,*
*Equifax Information Services LLC*

*/s/ Julian A. Jackson-Fannin*
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
Harvey W. Gurland, Jr.
Florida Bar No. 284033
DUANE MORRIS LLP
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131
Tel: 305.960.2200
jjfannin@duanemorris.com
hwgurland@duanemorris.com

Ryan E. Borneman, Esq.
Admitted *Pro Hac Vice*
30 South 17th Street
Philadelphia PA, 19320
Tel:  215-979-1105
reborneman@duanemorris.com

*Counsel for Defendant, TD Bank, N.A.*